<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL HEALTH PLAN CORPORATION,<br>                Plaintiff,<br><br>v.<br><br>TEAMSTERS LOCAL 469 AS SUCCESSOR IN INTEREST TO THE TEAMSTERS LOCAL 418 WELFARE FUND,<br>        Defendant/Third Party Plaintiff<br><br>v.<br><br>ALFRED PASCARELLA, JR., JAMES LAMARCA, MICHAEL PAGLIUCA, ALBERT TUTELA, MICHAEL BERZANSKY AND JOHN DOE AND RICHARD ROE,<br>        Third Party Defendants. | Civil Action No. 09-01596 (SDW)<br><br><br>**OPINION**<br><br><br>April 22, 2013 |

**WIGENTON**, District Judge.

Before this Court is Defendant/Third Party Plaintiff Teamsters Local 469's motion to certify this Court's November 28, 2012 order for interlocutory appeal pursuant to Federal Rule of Civil Procedure 54(b) and 28 U.S.C. 1292(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court **DENIES** Defendant's motion.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

National Health Plan Corporation ("NHP") is a medical and hospital benefits plan administrator. (*See* Dkt. No. 98, Plaintiff's Statement of Material Facts not in Dispute ("Pl.'s Facts") ¶ 1.) NHP filed suit against Local 469 Welfare Fund ("the Fund"), the successor in

interest to NHP's former client Teamsters Local 418 Welfare Fund ("the 418 Fund"), for $110,675.90 owed to NHP pursuant to agreement, contract and course of dealing. (*See* Pl.'s First Am. Compl., Count 1. ¶¶ 2-4.) The Fund countersued NHP for breach of fiduciary duty for charging and collecting unreasonable fees. (*See* Fund's Answer, Count 1.) The Fund also sued the 418 Fund's Trustees, who are trustees for the Fund, for breach of fiduciary duty.

The 418 Fund was an employee welfare fund created to manage health benefits and services for union members and their dependents who participated in the Local 418 Welfare Plan. (*See* Dkt. No. 99-2, Third Party Defendant Trustees' Statement of Uncontested Material Facts in Support of Their Summ. J. Mot. ("Trustees' Facts") ¶ 1.) The 418 Fund was established and maintained under ERISA, 29 U.S.C. 1001 et seq. (*See* Trustees' Facts ¶ 2.) The 418 Fund was overseen by a Board of Trustees in accordance with the Declaration of Trust—a document written by the Trustees of the 418 Fund outlining the purposes of the 418 Fund and the powers and duties of the Trustees. (*See* Trustees' Facts ¶¶ 3-4; Dkt. No. 99-8, Decl. of Rosemary J. Bruno ("Bruno Decl."), Ex. K ("Decl. of Trust") at 1, 4, 15.) On November 1, 2008, the 418 Fund merged into Local 469 Welfare Fund which is the successor in interest to the 418 Fund. (*See* Trustees' Facts ¶ 6.)

Alfred Pascarella, Jr., James Lamarca, Michael Pagliuca, Albert Tutela and Michael Berzansky served as trustees of the 418 Fund for six years before the commencement of this action. (*See* Def.'s Facts ¶ 7.) Pascarella worked at the Fund since 1974 and became a Trustee in 1994 before becoming Fund manager on November 26, 2006. (*See* Trustees' Facts ¶¶ 8, 10-12.)

NHP is a third party administrator that engages in administering medical and hospital benefits plans in addition to providing prescription programs. (*See* Pl.'s Facts ¶¶ 1-2.) The Fund

was a self-insured plan and contracted with NHP for services including plan administration and claims processing, though the actual scope of NHP's services is disputed.  (*See* Pl.'s Facts ¶ 5; Dkt. No. 114, Teamsters Local 469 Welfare Fund, Def./Third Party Pl.'s Resp. to Pl., NHP's Rule 56 Statement of Material Facts Allegedly not in Dispute in Opp'n to Mot. Summ. J. ("Def.'s Resp. to Pl.'s Facts") ¶¶ 5-6.)

From 1994 to 2008, the Fund entered into multiple agreements with NHP. (*See* Trustees' Facts ¶¶ 14, 18, 28.)  Beginning in 1994, NHP agreed to provide services for the Fund such as providing and maintaining a network of healthcare providers and hospitals, and "[a]dministration of major medical, PPO [(Preferred Provider Organization)] and hospital claims," among other things.  (Pl.'s Mot. Summ. J., Ex. B (the "1994 Agreement") ¶ 1.)  Until 2008 when the relationship between NHP and the Fund disintegrated, NHP provided prescriptions to the Fund and the Fund paid the per-member per-month rate.  (*See* Pl.'s Facts ¶ 9; Def.'s Resp. to Pl.'s Facts ¶¶ 9-10.)  NHP followed the Fund's Summary Plan—that described the medical and hospital benefits provided for Fund members—to administer and process claims.  (*See* Pl.'s Facts ¶¶ 16, 19.)  NHP claims that it "did not handle or control the Fund's moneys [sic] or accounts in payment of claims[,]" and that "NHP's administration of the Fund's hospital and medical benefits was 'ministerial.'"  (Pl.'s Facts ¶¶ 18-21.)

In 2002 NHP arranged for access to the Horizon of New York Healthcare Hospital and Provider Network ("Horizon") and submitted a proposal to the Fund for it to access Horizon's network.  (*See* Pl.'s Facts ¶¶ 12-13.)  The Fund accepted the proposal, agreeing to access Horizon's network through NHP with NHP as a third party administrator.  (*See id.* ¶¶ 13, 15.)

3

On January 1, 2007, due to factors unrelated to the parties, the Fund independently entered into an Agreement with Horizon Blue Cross/Blue Shield of New Jersey[1] ("Horizon NJ"), and gained access to the same network it previously had access to through NHP.  (*See* Pl.'s Facts ¶ 23; Def.'s Resp. to Pl.'s Facts ¶ 23; Pl.'s Mot. Summ. J., Ex. R ("Horizon Agreement").)

### a. Horizon Network through NHP

The Horizon network was beneficial to the Fund because it gave the Fund access to greater discounts than they were receiving at the time and access to a larger network than the Fund had access to with NHP.  (*See* Trustees' Facts ¶ 30-31.)

NHP and the Trustees claim that the Horizon network was unavailable to the Fund without NHP's assistance because Horizon's underwriting procedures required that a labor organization have at least 300 members to be able to join the network, and from 2002-2008 the Fund had less than 300 members.  (*See* Trustees' Facts ¶ 32.)  While the Fund agrees that Fund membership never reached or exceeded 300, it disagrees that the Horizon network was unavailable to it without NHP's assistance.  (*See* Def.'s Resp. to Trustees' Facts ¶ 32.)  The Fund claims there are exceptions that would have allowed it to access the Horizon network without NHP.  (*See* Def.'s Resp. to Trustees' Facts ¶ 32.)

When Horizon of New York went out of business, NHP had to provide a new network for the Fund.  (*See* Trustees' Facts ¶ 41-42.)  The Trustees claim that the only way the Fund could retain the discounts offered by Horizon was for NHP to broker an agreement with Horizon of New Jersey.  (*See id.* at ¶¶ 42-43.)  The Fund, however, denies that there is any evidence—apart from testimony from the Trustees—to confirm these allegations.  (*See* Def.'s Resp. to Trustees' Facts ¶ 42.)

---

[1] Though Horizon of New York and Horizon of New Jersey are different entities, the Healthcare Hospital and Provider network is the same.  (Pl.'s Facts ¶ 23; Pl.'s Mot. Summ. J., Ex. G 35.)

The Trustee and the Fund further disagree as to whether any review of different service providers was conducted by the Trustees. (*See id.* at ¶¶ 56-59.) The two parties also disagree as to whether trustee John Pirnat breached a fiduciary duty. In 2007, the Local 418 was put in Trusteeship, and John Pirnat was made Trustee. (*See* Trustees' Facts ¶¶ 63-65.)

      b. *Procedural History*

NHP filed this action in the Superior Court of New Jersey on or about June 13, 2008 (*See* Dkt. No. 1 at ¶ 1.) After the Fund filed a Third Party Complaint against the Trustees, the Trustees removed the action to the District Court of New Jersey on or around April 6, 2009. (*See* Dkt. No. 1.) On May 12, 2012, NHP filed a motion for summary judgment as to the counterclaims asserted by the Fund. (*See* Dkt. No. 98.) On May 15, 2012, the Trustees filed a motion to dismiss and in the alternative a motion for summary judgment concerning the third party claims brought by the Fund. (*See* Dkt. No. 99.) On November 28, 2012, this Court entered an order ("November 2012 Order") granting NHP's summary judgment motion and the Trustees' motion to dismiss, and denying the Trustee's summary judgment motion. (*See* Dkt. No. 122.) In the opinion accompanying the November 2012 Order, this court found that: (1) the Fund lacked standing to bring suit under ERISA or Article III of the U.S. Constitution, (2) the Fund's state law claims were preempted by ERISA, and (3) NHP is not a fiduciary of the Fund. (*See* Dkt. No. 121.)

## II.   LEGAL STANDARD

"An interlocutory appeal is designed to save resources and expedite the termination of litigation." *Avaya Inc. v. Telecom Labs, Inc.*, No. CIV.A. 06-2490, 2012 WL 1495371, at * 5 (D.N.J. April 26, 2012). For a district court to certify an interlocutory appeal, the court's order must: "(1) involve a controlling question of law, (2) offer substantial ground for difference of

opinion as to its correctness, and (3) if appealed immediately materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir.1974) (internal quotations omitted); *see also* 28 U.S.C. § 1292(b). "The decision whether or not to grant certification is entirely within the district court's discretion, and even if all three criteria under Section 1292(b) are met, the district court may still deny certification." *Krishanthi v. Rajaratnam*, No. CIV.A. 09-05395, 2011 WL 1885707, *2 (D.N.J. May 18, 2011) (internal quotations omitted) (quoting *Morgan v. Ford Motor Co.*, No. CIV.A. 06-1080, 2007 WL 269806, *2 (D.N.J. Jan. 5, 2007). Accordingly, certification should be used sparingly because only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal quotation marks omitted).

### III. DISCUSSION

The Fund argues that each element needed to certify an interlocutory appeal is satisfied, thereby permitting this Court to grants its motion.

Regarding the first element, the Third Circuit has defined a controlling issue of law as encompassing "every order which, if erroneous, would be reversible error on final appeal," as well as, those orders which are "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755. The Fund perfunctorily argues that this Court's November 2012 Order involves a controlling issue of law. Accordingly, the Fund's argument falls short of satisfying the first element.

Regarding the second element, substantial ground for a difference of opinion "must arise out of genuine doubt as to the correct legal standard." *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996). "Such doubt can stem from conflicting precedent, the absence of

6

controlling law on a particular issue, or novel and complex issues of statutory interpretation." *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. Civ.A. 11-11 2013 WL 663301, at*4 (D.N.J. Feb. 21, 2013)(citing *New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld*, No. Civ.A. 09–1629(AET), 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009)).  Here, the Fund's basis for interlocutory appeal does not concern the legal standard that was applied in this Court's previous decision.  Instead, the Fund presents a Seventh Circuit case in which the circuit court stated, without any analysis, that a pension fund had standing to sue under ERISA for breach of fiduciary duty.  *See Peoria Union Stock Yards Co. Retirement Plan v. Penn. Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983).

Regarding the third element, certification will materially advance the ultimate termination of litigation where an interlocutory appeal would: "(1) eliminate the need for trial; (2) eliminate complex issues so as to simplify the trial; or (3) eliminate issues to make discovery easier and less costly."  *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D.Pa.1994).  Here, the Fund fails to satisfy any component of the third element.  First, the procedural posture of this case makes it clear that the issue of damages still remains; therefore, certification would not obviate the need for trial.  Second, certification would not simplify trial as only one issue remains.  Last, certification would not affect discovery as that phase of litigation has already ended.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion is **DENIED**.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc:  Hon. Madeline Cox Arleo, U.S.M.J.
     Parties